

**M. Patrick McDowell**

E-Mail: pmcdowell@brunini.com
Direct: 601.960.6925

The Pinnacle Building
Suite 100
190 East Capitol Street
Jackson, Mississippi 39201
Telephone: 601.948.3101

Post Office Drawer 119
Jackson Mississippi 39205

Facsimile: 601.960.6902

January 29, 2016

Lyle W. Cayce, Clerk
United States Court of Appeals
Fifth Circuit
600 S. Maestri Place
New Orleans, LA 70130

    Re:    ***Stephen Farmer, et al. v. D&O Contractors, Inc., et al.***; No. 15-30297

Dear Mr. Cayce:

In response to Mr. Eastland's January 28, 2016 letter, I write to advise the Court pursuant to Fed. R. App. P. 28(j) and Fifth Cir. R. 28.4 of two decisions addressing *Pension Fund Mid-Jersey Trucking Industry v. Omni Funding Group*, 687 F. Supp. 962 (D.N.J. 1988), the case cited in Mr. Eastland's letter.

In *Kerman v. Chenery Assocs.*, 2011 WL 1106736 (W.D. Ky. 2011), the court declined to follow *Pension Fund*'s extension of the Clayton Act's tolling provision, 15 U.S.C. § 16(i), to civil RICO claims given "the absence of any binding authority which directs us to do so." *Id.* at *3. The court also found that the tolling provision would not apply anyway because – as in this case – the criminal investigation did not result in the filing of an indictment so as to "institute" a "criminal proceeding" within the limitation period as contemplated by Section 16(i). *Id.* at *4. "There is nothing in *Pension Fund* or the language of the Clayton Act statute to suggest that an investigation by the United States unaccompanied by civil or criminal prosecution suspends the running of the limitations period. . . . Thus there is no basis in this case to suspend the limitations period." *Id.*

The court in *Preserve Petrified Forrest v. Renzi*, 2013 WL 530574 (D. Ariz. 2013), did follow *Pension Fund* in extending the Clayton Act's tolling provision to civil RICO claims. *Id.* at *3. Specifically, the court adopted plaintiffs' argument that "the statute of limitations should be tolled because Defendants were *indicted* in a parallel prosecution initiated before the four-year statute had run." *Id.* at *2 (emphasis added). The court noted the factual distinction in *Kerman*, in which "the tolling provision would not apply because the four-year statute had run before the parallel criminal action was initiated" – i.e., before an indictment was issued. *Id.* The *Preserve* court thus found that "the statute of limitations was tolled as of February 21, 2008, the date of Defendant's *indictment*." *Id.* at *3 (emphasis added).

Lyle W. Cayce, Clerk
January 29, 2016
Page 2

    I thank the Court again for its consideration of these matters.

                                  Sincerely,

                                  */s/ M. Patrick McDowell*

                                  M. Patrick McDowell

MPM/ca

United States Code Annotated
Title 15. Commerce and Trade
Chapter 1. Monopolies and Combinations in Restraint of Trade (Refs & Annos)

15 U.S.C.A. § 16

§ 16. Judgments

Effective: June 22, 2004
Currentness

(a) Prima facie evidence; collateral estoppel

A final judgment or decree heretofore or hereafter rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: *Provided*, That this section shall not apply to consent judgments or decrees entered before any testimony has been taken. Nothing contained in this section shall be construed to impose any limitation on the application of collateral estoppel, except that, in any action or proceeding brought under the antitrust laws, collateral estoppel effect shall not be given to any finding made by the Federal Trade Commission under the antitrust laws or under section 45 of this title which could give rise to a claim for relief under the antitrust laws.

(b) Consent judgments and competitive impact statements; publication in Federal Register; availability of copies to the public

Any proposal for a consent judgment submitted by the United States for entry in any civil proceeding brought by or on behalf of the United States under the antitrust laws shall be filed with the district court before which such proceeding is pending and published by the United States in the Federal Register at least 60 days prior to the effective date of such judgment. Any written comments relating to such proposal and any responses by the United States thereto, shall also be filed with such district court and published by the United States in the Federal Register within such sixty-day period. Copies of such proposal and any other materials and documents which the United States considered determinative in formulating such proposal, shall also be made available to the public at the district court and in such other districts as the court may subsequently direct. Simultaneously with the filing of such proposal, unless otherwise instructed by the court, the

United States shall file with the district court, publish in the Federal Register, and thereafter furnish to any person upon request, a competitive impact statement which shall recite--

**(1)** the nature and purpose of the proceeding;

**(2)** a description of the practices or events giving rise to the alleged violation of the antitrust laws;

**(3)** an explanation of the proposal for a consent judgment, including an explanation of any unusual circumstances giving rise to such proposal or any provision contained therein, relief to be obtained thereby, and the anticipated effects on competition of such relief;

**(4)** the remedies available to potential private plaintiffs damaged by the alleged violation in the event that such proposal for the consent judgment is entered in such proceeding;

**(5)** a description of the procedures available for modification of such proposal; and

**(6)** a description and evaluation of alternatives to such proposal actually considered by the United States.

(c) Publication of summaries in newspapers

The United States shall also cause to be published, commencing at least 60 days prior to the effective date of the judgment described in subsection (b) of this section, for 7 days over a period of 2 weeks in newspapers of general circulation of the district in which the case has been filed, in the District of Columbia, and in such other districts as the court may direct--

**(i)** a summary of the terms of the proposal for consent judgment,

**(ii)** a summary of the competitive impact statement filed under subsection (b) of this section,

Case: 15-30297   Document: 00513361941   Page: 5   Date Filed: 01/29/2016

§ 16. Judgments, 15 USCA § 16

**(iii)** and a list of the materials and documents under subsection (b) of this section which the United States shall make available for purposes of meaningful public comment, and the place where such materials and documents are available for public inspection.

**(d) Consideration of public comments by Attorney General and publication of response**

During the 60-day period as specified in subsection (b) of this section, and such additional time as the United States may request and the court may grant, the United States shall receive and consider any written comments relating to the proposal for the consent judgment submitted under subsection (b) of this section. The Attorney General or his designee shall establish procedures to carry out the provisions of this subsection, but such 60-day time period shall not be shortened except by order of the district court upon a showing that (1) extraordinary circumstances require such shortening and (2) such shortening is not adverse to the public interest. At the close of the period during which such comments may be received, the United States shall file with the district court and cause to be published in the Federal Register a response to such comments. Upon application by the United States, the district court may, for good cause (based on a finding that the expense of publication in the Federal Register exceeds the public interest benefits to be gained from such publication), authorize an alternative method of public dissemination of the public comments received and the response to those comments.

**(e) Public interest determination**

**(1)** Before entering any consent judgment proposed by the United States under this section, the court shall determine that the entry of such judgment is in the public interest. For the purpose of such determination, the court shall consider--

**(A)** the competitive impact of such judgment, including termination of alleged violations, provisions for enforcement and modification, duration of relief sought, anticipated effects of alternative remedies actually considered, whether its terms are ambiguous, and any other competitive considerations bearing upon the adequacy of such judgment that the court deems necessary to a determination of whether the consent judgment is in the public interest; and

**(B)** the impact of entry of such judgment upon competition in the relevant market or markets, upon the public generally and individuals alleging specific injury from the violations set forth in the complaint including consideration of the public benefit, if any, to be derived from a determination of the issues at trial.

**(2)** Nothing in this section shall be construed to require the court to conduct an evidentiary hearing or to require the court to permit anyone to intervene.

**(f) Procedure for public interest determination**

In making its determination under subsection (e) of this section, the court may--

**(1)** take testimony of Government officials or experts or such other expert witnesses, upon motion of any party or participant or upon its own motion, as the court may deem appropriate;

**(2)** appoint a special master and such outside consultants or expert witnesses as the court may deem appropriate; and request and obtain the views, evaluations, or advice of any individual, group or agency of government with respect to any aspects of the proposed judgment or the effect of such judgment, in such manner as the court deems appropriate;

**(3)** authorize full or limited participation in proceedings before the court by interested persons or agencies, including appearance amicus curiae, intervention as a party pursuant to the Federal Rules of Civil Procedure, examination of witnesses or documentary materials, or participation in any other manner and extent which serves the public interest as the court may deem appropriate;

**(4)** review any comments including any objections filed with the United States under subsection (d) of this section concerning the proposed judgment and the responses of the United States to such comments and objections; and

**(5)** take such other action in the public interest as the court may deem appropriate.

**(g) Filing of written or oral communications with the district court**

Not later than 10 days following the date of the filing of any proposal for a consent judgment under subsection (b) of this section, each defendant shall file with the district court a description of any and all written or oral communications by or on behalf of such defendant, including any and all written or oral communications on behalf of such defendant by any officer, director, employee, or agent of such defendant, or other person, with any officer or employee of the United States

concerning or relevant to such proposal, except that any such communications made by counsel of record alone with the Attorney General or the employees of the Department of Justice alone shall be excluded from the requirements of this subsection. Prior to the entry of any consent judgment pursuant to the antitrust laws, each defendant shall certify to the district court that the requirements of this subsection have been complied with and that such filing is a true and complete description of such communications known to the defendant or which the defendant reasonably should have known.

(h) Inadmissibility as evidence of proceedings before the district court and the competitive impact statement

Proceedings before the district court under subsections (e) and (f) of this section, and the competitive impact statement filed under subsection (b) of this section, shall not be admissible against any defendant in any action or proceeding brought by any other party against such defendant under the antitrust laws or by the United States under section 15a of this title nor constitute a basis for the introduction of the consent judgment as prima facie evidence against such defendant in any such action or proceeding.

(i) Suspension of limitations

Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, but not including an action under section 15a of this title, the running of the statute of limitations in respect to every private or State right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter: *Provided, however*, That whenever the running of the statute of limitations in respect of a cause of action arising under section 15 or 15c of this title is suspended hereunder, any action to enforce such cause of action shall be forever barred unless commenced either within the period of suspension or within four years after the cause of action accrued.

**CREDIT(S)**
 (Oct. 15, 1914, c. 323, § 5, 38 Stat. 731; July 7, 1955, c. 283, § 2, 69 Stat. 283; Dec. 21, 1974, Pub.L. 93-528, § 2, 88 Stat. 1706; Sept. 30, 1976, Pub.L. 94-435, Title III, § 302(2), 90 Stat. 1396; Sept. 12, 1980, Pub.L. 96-349, § 5(a), 94 Stat. 1157; June 22, 2004, Pub.L. 108-237, Title II, § 221(b), 118 Stat. 668.)

15 U.S.C.A. § 16, 15 USCA § 16

Current through P.L. 114-114 (excluding 114-92, 114-94, 114-95 and 114-113) approved 12-28-2015

End of Document © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 1106736
United States District Court, W.D. Kentucky, at Louisiville.

Mark L. KERMAN, et al., Plaintiffs
v.
CHENERY ASSOCIATES, INC., et al., Defendants.

Civil Action No. 3:06CV–338–S.
|
March 23, 2011.

**Attorneys and Law Firms**

Clare Feler Cox, Jessica T. Sorrels, Joseph P. Hummel, Matthew D. Watkins, Steven A. Goodman, Donald L. Cox, Reva D. Campbell, Lynch, Cox, Gilman & Goodman, P.S.C., Louisville, KY, for Plaintiffs.

Daniel T. Bernhard, Stewart H. Foreman, Freeland, Cooper & Foreman LLP, San Francisco, CA, Michael W. Oyler, Trevor L. Earl, Reed Weitkamp Schell & Vice PLLC, Edward H. Stopher, Jeffrey W. Adamson, Raymond G. Smith, Boehl Stopher & Graves, LLP, Louisville, KY, David E. Ross, Mark P. Ressler, Ronald R. Rossi, Seth B. Davis, Trevor J. Welch, Kasowitz, Benson, Torres & Friedman LLP, Kathryn Keneally, India Decarmine, Meredith Sharoky, Fulbright & Jaworski, LLP, New York, NY, Joseph H. Park, Fulright & Jaworski, LLP, Los Angeles, CA, for Defendants.

*MEMORANDUM OPINION*

CHARLES R. SIMPSON III, District Judge.

*1 This matter is before the court on motion of the defendants, Bayerische Hypound Vereinsbank and HVB U.S. Finance, Inc. (collectively "HVB"), to dismiss the Fourth Amended Complaint as to them.

The plaintiff, Mark Kerman was the founder of Kenmark Optical in Louisville, Kentucky. In the summer of 2000, he and his wife were approached by an individual named Craig Stone about an investment opportunity called a Custom Adjustable Rate Debt Structure (known as a "CARDS transaction"). Believing that the transaction would provide them with Euros to conduct business in Europe and that it would provide them certain tax advantages on the investment, they entered into a contract with an entity called Chenery Associates to invest $5,000,000.00, agreeing to pay a flat fee of $500,000.00 for the transaction. Ultimately, the transaction was found by the Internal Revenue Service to be a potentially abusive tax shelter, as defined by the Internal Revenue Code, and the Kermans were charged nearly $500,000.00 in penalties for the year 2000.

On February 23, 2006, HVB entered into a Deferred Prosecution Agreement with the United States Attorney for the Southern District of New York, in connection with the Department of Justice's investigation into illegal tax shelters.

The Kermans filed suit against Chenery, attorney R.J. Ruble, and the law firm of Sidley, Austin, Brown & Wood, LLP, for fraud, conspiracy, commercial bribery, and violations of the Racketeer Influenced and

Corrupt Organizations Act, 18 U.S.C. § 1962 on June 13, 2006. They alleged that they were defrauded by the defendants when they were induced to invest in the CARDS transaction and paid Chenery a large fee on the promise that the investment provided a legal means to reduce their tax liability when, in fact, the defendants knew that their scheme would be disallowed by the IRS. The Kermans alleged that they were solicited to participate in the CARDS transaction and were promised a favorable opinion from a major law firm which would eliminate the risk of underpayment penalties from the IRS. The claims were refined through a number of amendments to the complaint. In a Third Amended Complaint filed in February of 2008, the Kermans added the HVB entities as defendants. It set out the alleged role of HVB in this matter. The Kermans alleged that HVB "acted as the bank in approximately twenty-nine CARDS transactions that resulted in over $265 million in losses claimed by participants and the avoidance of over $91 million in income taxes ... In return for substantial, guaranteed fees, HVB and the other CARDS Promoters and other con-conspirators implemented and caused to be implements the CARDS transactions and generated and caused to be generated false and fraudulent documentation to support the transactions ..." TAC, ¶¶ 43, 44. HVB was included in various claims made against "the defendants." There were few specifics concerning the alleged conduct of HVB beyond the three paragraphs designated The Role of HVB." TAC, ¶¶ 42–44.

*2 Leave to file a fourth amended complaint was sought in April 2009 amidst briefing of HVB's motion to dismiss the third amended complaint. The court permitted the filing of the fourth amended complaint which then superseded the third, stating the following claims:

(1) Civil RICO

(2) Civil RICO

(3) Breach of Fiduciary Duty

(4) Commercial Bribery—Chenery and Hahn

(5) Violation of KRS 141.990

(6) Intentional Misrepresentation and Fraud

(7) Professional Negligence—Chenery and Hahn

(8) Negligent Misrepresentation

(9) Rescission

(10) Civil Conspiracy

(11) Aiding and Abetting Breach of Fiduciary Duty

(12) Punitive Damages

As noted in the recent decision of *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 707 F.Supp.2d 702, 707 (W.D.Ky.2010), the retooling of the old *Conley v. Gibson* standard for dismissal requires a more discerning eye in evaluating motions to dismiss:

The Supreme Court has recently revised its understanding of the pleading standards under the Civil Rules. A complaint now "only survives a motion to dismiss if it 'contain[s] sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face.' *Courie v. Alcoa Wheel & Forged Prods.,* 577 F.3d 625, 629 (6th Cir.2009)(*quoting Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)). This raises the bar from where *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) had left it: Whereas under *Conley* a court was to dismiss a facially well-pleaded complaint only if its contents were so outlandish as to be utterly incapable of proof, *Iqbal* (along with its predecessor, *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)) advises us to toss out a case unless the allegations meet some standard of plausibility. *Courie,* 577 F.3d at 629–30. While we must take the complaint's factual allegations as true in making this assessment, we need not accept the truth of legal conclusions or draw unwarranted factual inferences. *DirectTV, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir.2007); *Gregory v. Shelby County,* 220 F.3d 433, 446 (6th Cir.2000).

The Kermans urge, however, that the motions must be considered under a summary judgment standard, as they refer to matters outside the pleadings. We find, however, that we may limit our review to those items referenced in the pleadings without alteration of the dismissal standard.

Generally, if a court considers matters outside of the pleadings on a 12(b)(6) motion to dismiss, the motion must be treated as one for summary judgment under Rule 56. Fed.R.Civ.P. 12(d) ... "Under certain circumstances, however, a document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings." *Greenburg v. Life Ins. Co. of Virginia,* 177 F.3d 507, 514 (6th Cir.1999) (citations omitted). The Sixth Circuit has held that "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Weiner v. Klais & Co.,* 108 F.3d 86, 89 (6th Cir.1997). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Id.*

**\*3** *River City Rentals, LLC v. Bays,* 2008 WL 5000170 (W.D.Ky. Nov. 21, 2008); *see also Thomas v. Publishers Clearing House, Inc.,* 29 Fed.Appx. 319 (6th Cir.2002)("Rule 10(c) allows the incorporation of exhibits or writing attached to a pleading ... and 'makes them an integral part of the pleading for all purposes.' 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1327 (2d ed.1990)").

I.

The court finds that the First and Second Claims alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") are time-barred. The Supreme Court has affirmed a 4–year statute of limitations for RICO claims. *Agency Holding Corp. v. Malley–Duff & Associates, Inc.,* 483 U.S. 143, 17 S.Ct. 2759, 97 L.Ed.2d 121 (1987). The limitations period runs "from the moment a diligent plaintiff discovered or should have discovered an injury to itself, not from the time it discovered the pattern of

predicate acts." *Curtis Investment Co., LLC v. Bayerische Hypo–Und Vereinsbank, AG,* 2007 WL 4564133 (N.D.Ga. Dec. 20, 2007), *quoting Rotella v. Wood,* 528 U.S. 549, 558–59, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000).

The Kermans entered into a purported thirty-year credit agreement the duration of which was crucial to the success of the transaction in generating the tax benefit sought by the Kermans. The Kermans allege that "the length of the loan was an important factor in evaluating the tax and business consequences of the transaction. If the Kermans had known that from the inception it was HVB's intent that the loan would be called within one year, they would not have entered into the transaction." Fourth Amend. Compl., ¶ 64. HVB terminated the credit agreement in December, 2001. As noted in *Curtis Investment Co.,* with the termination of the agreement, the Kermans "knew [they] had lost both the investment and tax advantages [they] intended to gain from the CARDS loan. Even if [the Kermans] did not ... know of HVB's fraudulent intent at the time of contracting, [the Kermans] had actual knowledge in 2001 of HVB's alleged breach of its promises and of the harm that would ensue." *Id.* at 10. Therefore, the RICO four-year limitations period expired in December, 2005. *See also Sims v. Ohio Casualty Insurance Co.,* 151 Fed.Appx. 433, 436 (6th Cir.2005).

The existence of an on-going criminal prosecution does not to toll the running of the limitations period with respect to these RICO claims. The Kermans urge the court to apply the suspension of limitations provision from the Clayton Act, 15 U.S.C. § 16(I), to the RICO claims in this case. In *Pension Fund Mid–Jersey Trucking Industry v. Omni Funding Group,* 687 F.Supp. 962 (D.N.J.1988), the court found that the Clayton Act provision suspended the limitations period for private civil claims when the United States had instituted a parallel antitrust action. The holding in *Pension Fund* has not been followed by any other court. The court itself noted that it was deciding a "novel issue." *Id.* at 963. In the absence of any binding authority which directs us to do so, the court will decline to suspend the limitations period on these RICO claims.

*4 Further, were we to follow the lead of the *Pension Fund* court and find that we must borrow the tolling and suspension provisions of the Clayton Act in conjunction with the four-year limitations period, *West v. Conrail,* 107 S.Ct. 1538 (1987), the suspension provision is not applicable on the facts before us. In *Pension Fund,* the court quoted from the Senate Report concerning modifications made to the tolling provisions:

> There are many instances where the statute of limitations as to a private cause of action may nearly have expired before suit is instituted by the Government under the antitrust laws. Although the statute is tolled during the pendency of those proceedings brought by the United States, the plaintiff in a treble-damage action may find himself hard pressed to reap the benefits of the Government's suit if, upon its conclusion, he has but a short time remaining to study the

Government's case, estimate his own damages, assess the strength and validity of his suit, and prepare and file his complaint. To alleviate such difficulties, the present bill would extend the tolling period not only for the duration of the Government's antitrust suit, but for one year thereafter.

*Id.* at 964, *quoting* 2 U.S.Code Cong. and Admin. News, 84th Cong.1955, at 2328, 2332. The court noted that "Courts have recognized that the Clayton Act's tolling provisions plainly reflect Congress's desire to make available to private litigants the benefits of prior Government antitrust litigation. [citations omitted]." *Pension Fund,* 687 F.Supp. at 964.

In this case, however, the four-year limitations period expired prior to the institution of any criminal proceedings against HVB. The limitations period expired in December, 2005 and the United States and HVB entered into a Deferred Prosecution Agreement on February 13, 2006. The Agreement states that "HVB will consent to the filing of a one-count Information in the United States District Court for the Southern District of New York" which would be subject to deferral for a period of eighteen months from the date of the signing of the agreement. Agt., ¶¶ 1, 9. There is nothing in *Pension Fund* or the language of the Clayton Act statute to suggest that an investigation by the United States unaccompanied by civil or criminal prosecution suspends the running of the limitations period. Once the limitations period expired in 2005, the later filing of an information against HVB did not revive the claims. Additionally, the Agreement itself contemplated that civil proceedings by private parties might occur contemporaneously with the on-going criminal investigation:

> ... HVB may raise defenses and/or assert affirmative claims in any civil proceedings brought by private parties as long as doing so does not contradict the Statement of Facts or such representations ...

Agt., ¶ 14. Thus there is no basis in this case to suspend the limitations period.

## II.

The Kermans concede that their claim for breach of fiduciary duty (Third Claim) is time-barred. Resp. p. 43. They assert a claim for aiding and abetting a breach of fiduciary duty (Eleventh Claim) which is also time barred. *Bariteau v. P.C. Financial Services Group, Inc.,* 285 Fed.Appx. 218, 223 (6th Cir.2008)("No Kentucky case ... has extended the [discovery] rule to fiduciary-breach actions"). The Fourth Claim (Commercial Bribery) and Seventh Claim (Professional Negligence) are not directed at HVB.

*5 The Fifth Claim alleges that the defendants caused the Kermans to file false tax returns, and that they are potentially liable for civil and criminal penalties including attorneys fees under the Kentucky Revenue Code. Pursuant to KRS 446.070, the Kermans claim that they may recover against the defendants for

their violations of the Kentucky statutes. Fifth Claim, ¶¶ 117–122; Resp., p. 55 ("In other words, the Kermans seek reimbursement for any of their own violations of the Kentucky Revenue Code which they incur as victims of the fraudulent CARDS scheme.").

The Kermans cite no authority for this claim other than the plain language of the statute which provides that "a person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." KRS 446.070. The complaint alleges that "[the action of the CARDS Promoters are in violation of KRS 141.990."

KRS 141.990(1) states that "any individual, fiduciary, corporation, employer, or other person who violates any of the provisions of this chapter shall be subject to the uniform civil penalties imposed pursuant to KRS 131.180." The Kermans urge that under KRS 141.990(6), they and HVB may be subject to penalties for in connection with the filing of a false return. However, the subsection states that

> *Any person* who willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under this chapter of a return ... which is fraudulent ... shall be guilty of a Class D Felony.

KRS 141.990(6).

The Kermans have not shown that HVB is a "person" under this statute. Subsection (1) differentiates between any "individual, fiduciary, corporation, employer, or other person ..." Subsection (2) addresses "any individual," while subsection (3) addresses "any corporation." Subsection (6), however, refers to any "person." In the definitions for Chapter 141 on Income Taxes, " 'person' means 'person' as defined in Section 7701(a)(1) of the Internal Revenue Code. A quick visit to that section reveal that "person" means "an individual, a trust, estate, partnership, association, company or corporation." Therefore, HVB may arguably have violated KRS 141.990(6). To the extent that the Kermans seek to recover civil and criminal penalties and attorneys fees which they allege they would otherwise not have incurred but for HVB's violation of KRS 141.990(6), they appear to state a claim for relief. However, the analysis does not stop there.

In *Freschi v. Grand Coal Adventure,* 767 F.2d 1041, 1051 (2d Cir.1985), the Second Circuit found that

> ... the interest and penalties IRS assessed against the [taxpayer] were not consequential damage; rather they were simply compensation to IRS for the use of money IRS would have had if the [taxpayer] had not wrongly withheld it. The interest and penalties were not, the trial court correctly observed, really a damage suffered by the [taxpayer] at all, but a return by him of

what would otherwise be a windfall resulting from his opportunity to use money to which he was not entitled.

*6 The Kermans do not offer contrary authority.[1] However, *Freschi* is not binding authority for this court and it is slim on analysis. We find some reason to differentiate between damage claims for interest and penalties assessed against a delinquent taxpayer. Interest assessed against the taxpayer is not a consequential damage, but rather a disgorgement by the taxpayer of the sums gained from the wrongful retention of the monies owed. *See Stone v. Kirk*, 8 F.3d 1079, 1093 (6th Cir.1993). However, a better argument may be made for the recovery of penalties assessed against the taxpayer, as these sums arguably would not have been assessed against the taxpayer but for the alleged wrongful conduct of the defendants and bear no relation to the time value of the monies wrongly withheld from the IRS. Rather, penalties are a disincentive to not paying tax obligations when due. The court will decline to preclude any elements of a damage recovery under the Fifth Claim at this time.

---

[1]  *Freschi* precluded recovery of civil and criminal penalties. The *Freschi* case also addressed a claim for interest. However, interest is not in issue here, as there is no mention of interest in the Fifth Claim.

They also seek to recover attorneys fees. HVB has not addressed this aspect of the claim other than to state that HVB's conduct did not amount to a violation of KRS 191.990(6). We leave to another day this argument on the merits of the claim.

## III.

The Sixth and Eighth Claims (Intentional Misrepresentation/Fraud and Negligent Misrepresentation) are barred by the five-year statute of limitations. KRS 413.120(12). The limitations period commences on a claim for fraud or misrepresentation when it is "discovered or, in the exercise of reasonable diligence, should have been discovered." *Hernandez v. Daniels*, 471 SWAT 25, 26 (Ky.1971); *McMurray v. Batts*, 2005 WL 2429109 (W.D.Ky. Sept. 30, 2005). The recent case of *Fluke Corp. v. LeMaster*, 306 S.W.3d 55 (Ky.2010) states that "[an injured party has an affirmative duty to use diligence in discovering the cause of action within the limitations period. Any fact that should excite his suspicion is the same as actual knowledge of this entire claim." *Id.*, quoting *Hazel v. General Motors Corp.*, 863 F.Supp. 435, 438–39 (W.D.Ky.1994). Thus in December of 2001 when the CARDS loan was called and knew they had lost the investment and associated tax advantages they hoped to gain, they had a duty to investigate potential claims for their injuries.

The Kermans' assertion in their response that they did not discover HVB's *particular role* until Roy Hahn's 2008 deposition and Silvie DeMetrio's 2009 deposition. Resp., p. 40–41. However, this simply does not cure the failure to pursue the claims within the limitations period. The Kermans knew they had been injured and the cause of the injury in December of 2001. They simply failed to further investigate the metes and bounds of their claims. As The Kermans did not timely

file them, the Sixth and Eighth claims must therefore be dismissed.

## IV.

The Ninth Claim seeks rescission of the Credit Agreement and refund of fees it paid for the "services" provided to the Kermans. The Kermans contend that these "services" had no value, as the CARDS loan was recalled within the first year and they did not receive the benefit of their bargain. HVB initially urges that the Ninth Claim must fail because there is no current agreement between the Kermans and HVB. However, they abandon this argument in their reply, stating in footnote that rescission is an equitable remedy "which can only be awarded following the adjudication of an otherwise viable cause of action." Reply, p. 8, fn. 6. HVB seeks dismissal only insofar as it contends that all other causes of action must be dismissed. HVB will not succeed in obtaining dismissal of all claims against it. The court will also deny dismissal of the Ninth Claim.

## V.

*7 The Tenth Claim asserts a civil conspiracy among the defendants to perpetrate the wrongful schemes against the Kermans. KRS 413.140(1)(c) provides a one-year limitations period for civil conspiracy. We conclude that the same analysis must be applied to this claim as to the claims for fraud and misrepresentation.

The Kermans urge that the cause of action does not accrue until a plaintiff "discovers, or in the exercise of reasonable diligence should have discovered, not only that he has been injured but also that his injury may have been caused by the defendant's conduct." *Manly v. Middletown & Reutlinger, P.S. C.,* 77 F.Supp.2d 810, 815 (W.D.Ky.1999)(*quoting Hazel, supra.,* and *Perkins v. Ne. Log Homes,* 808 S.W.2d 809, 818 (Ky.1991)). In December of 2001 when the CARDS loan was called, knew they were injured and knew at whose hands they had suffered this injury. They had a duty to exercise reasonable diligence in attempting to ascertain the nature and extent of their claims within the limitations period. They failed to timely file a conspiracy claim. *Bowden v. City of Franklin,* 13 Fed.Appx. 266, 275 (6th Cir.2001) Therefore, the Tenth Claim must be dismissed.

For the reasons set forth herein, the motion of HVB to dismiss will be granted in part and denied in part.[2] A separate order will be entered herein this date in accordance with this opinion.

[2] The Kermans seek an award of punitive damages, urging that the defendants' conduct was malicious, willful and wanton. As a number of the claims survive the motion to dismiss, the punitive damage claim also remains viable.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 1106736, RICO Bus.Disp.Guide 12,034

---

End of Document    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2016 Thomson Reuters. No claim to original U.S. Government Works.    8

2013 WL 530574
United States District Court,
D. Arizona.

PRESERVE PETRIFIED
FORREST, et al., Plaintiffs,
v.
Richard G. RENZI, et al., Defendants.

No. CV–12–08140–PHX–DGC.
|
Feb. 12, 2013.

**Attorneys and Law Firms**

Richard R. Thomas, Stephen Charles Biggs, Smith Campbell Clifford Kearney Gore, Scottsdale, AZ, for Plaintiffs.

Raymond Arthur Hanna, Brown Hanna & Mull PLLC, Prescott, AZ, Mark L. Collins, Gust Rosenfeld PLC, Tucson, AZ, Timothy J. Watson, Gust Rosenfeld PLC, Phoenix, AZ, for Defendants.

ORDER

DAVID G. CAMPBELL, District Judge.

*1 Before the Court are motions to dismiss from Defendants James Sandlin and Terry Russell (Doc. 16) and Defendants Richard G. Renzi and Roberta Renzi (Doc. 18). All Defendants argue that the claims are barred by the statute of limitations. Plaintiffs filed a consolidated response to both motions on December 7, 2012 (Doc. 21) and Defendants filed a reply (Doc. 23). No party has requested oral argument. For the reasons that follow, the court will deny the motions to dismiss.

**I. Background.**

Plaintiffs bring claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et. seq. They claim that on May 5, 2005, American Land Holdings, LLC agreed to purchase 480 acres of property from Defendants Sandlin and Russell for $4.5 million dollars, a price which allegedly was grossly inflated. Doc. 21 at 2. Plaintiffs maintain that the land was sold at the inflated price "through a pattern of racketeering activity involving extortion, honest services wire fraud, money laundering, and various monetary transactions involving criminally derived property." Doc. 21 at 2. Two defendants, Renzi and Sandlin, were indicted for their conduct related to Plaintiffs' claims on February 21, 2008, and are still awaiting trial. Doc. 1 ¶¶ 207, 212. Defendants argue that Plaintiff's civil RICO claims are barred by the statute of limitations.

**II. Legal Standard.**

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer,* 568 F.3d 1063, 1067 (9th Cir.2009). "[T]he statute of limitations defense ... may be raised by a motion to dismiss ... [i]f the running of the statute is apparent on the face of the complaint." *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir.1980) (citing *Graham v. Taubman,* 610 F.2d 821 (9th Cir.1979)). However, even if the relevant dates alleged in the complaint are

beyond the statutory period, the " 'complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.' " *Hernandez v. City of El Monte,* 138 F.3d 393, 402 (9th Cir.1998) (quoting *Supermail Cargo, Inc. v. United States,* 68 F.3d 1204, 1206 (9th Cir.1995); *see Cervantes v. City of San Diego,* 5 F.3d 1273, 1275 (9th Cir.1993).

### III. Analysis.

In *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,* 483 U.S. 143, 146, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) (*"Malley–Duff"*), the Supreme Court borrowed the four-year statute of limitations from the Clayton Act, 15 U.S.C. § 15, and applied it to the RICO civil enforcement provision because RICO did not provide an express statute of limitations. The Supreme Court borrowed the limitations period from the Clayton Act because it offered "the closest analogy to civil RICO"—both statues are "designed to remedy economic injury by providing for the recovery of treble damages, costs, and attorney's fees." *Malley–Duff,* 483 U.S. at 150–51.

*2 In RICO cases, the statute of limitations begins to run when the plaintiff discovers his injury. *Grimmett v. Brown,* 75 F.3d 506, 511 (9th Cir.1996). Defendants argue that Plaintiffs must have discovered their injury no later than one of three dates: the closing date of the property sale (October, 7, 2005), the day the last predicate act was committed (November 18, 2005), or the day the original indictment was returned against Renzi and Sandlin (February 21, 2008). Each of these dates falls more than four years before the date when Plaintiffs filed this suit.

Plaintiffs do not contest the date on which they discovered the injury, but rather argue that the statute of limitations should be tolled because Defendants were indicted in a parallel prosecution initiated before the four-year statute had run. The Clayton Act, from which the Supreme Court borrowed the four-year statute of limitations, contains a provision that suspends the running of a statute of limitations on a private right of action during the pendency of a criminal proceeding instituted by the United States and for one year thereafter if the private right of action is based in whole or in part on any matter complained of in the criminal proceeding. 15 U.S.C. § 16(i). Plaintiffs argue that borrowing the four-year statute of limitations from the Clayton Act should require courts to borrow tolling provisions which Plaintiffs view as part and parcel of the statute of limitations.

Few federal courts have addressed this issue, and it appears that no Ninth Circuit court has ever had occasion to do so. Two district courts outside the Ninth Circuit have considered the question, reaching different conclusions.

In *Pension Fund–Mid–Jersey Trucking Indus. v. Omni Funding Group,* 687 F.Supp. 962 (D.N.J.1988), the court applied the Clayton Act's tolling provision to a RICO civil enforcement claim, finding that there was a "clear line of authority which requires that where a statue of limitations is borrowed, the tolling and suspension provisions which are part of that statute must likewise be applied." *Id.* at 964. The district court noted

that the purpose of the tolling provision in the Clayton Act was to allow private plaintiffs to benefit from the Government's prior litigation and that a similar purpose could be served in the RICO civil enforcement context. *Id.* at 964–65. Ultimately, the court concluded that the tolling provisions and the statute of limitations were "inextricably intertwined" and that similarities that justified borrowing the statute of limitations from the Clayton Act also justified borrowing the tolling provision that modified the statute of limitations. *Id.*

The district court in *Kerman v. Chenery Associates, Inc.,* No.3:06CV–338–S, 2011 WL 1106736 (W.D.Ky. Mar.23, 2011), reached the opposite conclusion, finding that "the existence of an on-going criminal prosecution does not toll the running of the limitations period with respect to ... RICO claims." *Id.* at *3. The court noted that the holding in *Pension Fund* had not been followed by any other court (though it did not cite any cases where the issue had been presented), and declined to follow it "[i]n the absence of any binding authority." *Id.* The court also noted that even if borrowed, the tolling provision would not apply because the four-year statute had run before the parallel criminal action was initiated. *Id.* at *4.

*3 In *Malley–Duff,* the Supreme Court did not address the applicability of 15 U.S.C. § 16(i)'s tolling provision to RICO civil enforcement claims. With regard to statutes of limitations generally, the Supreme Court has held that "[a]ny period of limitation ... is understood fully only in the context of the various circumstances that suspend it from running against a particular cause of action." *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 463, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). Furthermore, in the context of borrowing state statutes of limitations to govern federal causes of action, the Supreme Court has held that, "In virtually all statutes of limitations the chronological length for the limitation period is interrelated with provisions regarding tolling, revival, and questions of application. Courts thus should not unravel state limitations rules unless their full application would defeat the goals of the federal statute at issue." *Hardin v. Straub,* 490 U.S. 536, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989). At least one commentator has recommended that federal courts apply 15 U.S.C. § 16(i) to RICO civil enforcement claims. Carli McNeill, Note, *Seeing the Forest: A Holistic View of the Rico Statute of Limitations,* 85 Notre Dame L.Rev. 1231, 1260 (2010). Justice Scalia has also recommended that when courts adopt an analogous claim's statute of limitations they should adopt it "whole, with all its accoutrements." *Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 196, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997) (Scalia, J, concurring in part and concurring in the judgment).

The Court concludes that the tolling provision in 15 U.S.C. § 16(i) applies to the RICO civil enforcement provisions. The Supreme Court did not arbitrarily select the Clayton Act's statute of limitations for RICO civil enforcement cases; it chose the statutory scheme most similar to RICO claims. The Court found that the Clayton Act and RICO both are "designed to remedy economic injury by providing for the recovery of treble damages, costs, and attorney's fees." *Malley–Duff,* 483 U.S. at 150–51. If the similarity of the statutes provides a basis

for adopting the Clayton Act's limitations period, it also provides a basis for adopting the tolling provision that is an integral part of that limitations period. Defendants have identified no distinction between Clayton Act and RICO violations that would suggest the tolling provision is suited only to Clayton Act remedies. The provision was designed by Congress to afford private litigants the benefits of prior government litigation, thereby conserving judicial resources. S.Rep. No. 84–6192, *reprinted in* 1955 U.S.C.C.A.N. 2328, 2332. That rationale applies equally well to RICO civil enforcement actions. The Court will not unravel interrelated "accoutrements" by applying the chronological length of the limitations period while ignoring statutory provisions clearly designed to alter that length.

Because the tolling provision applies, the Court finds that the statute of limitations was tolled as of February 21, 2008, the date of Defendant's indictment. Even if the injury was discovered on the date of the sale, May 5, 2005, the statute of limitations had not run by February 21, 2008.

**\*4** **IT IS ORDERED** that Defendants' motions to dismiss (Docs.16, 18) are **denied.**

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 530574, RICO Bus.Disp.Guide 12,324

**End of Document**                              © 2016 Thomson Reuters. No claim to original U.S. Government Works.